UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OMNI HOTELS MANAGEMENT CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:07-CV-1131-G |
| BRENNAN BEER GORMAN/ ARCHITECTS, P.C., ET AL., | ) ) ) | **ECF** |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are the motions of the defendants, Brennan Beer Gorman/Architects, P.C., Brennan Beer Gorman/Architects, L.L.P., and Brennan Beer Gorman Monk/Interiors, Inc., (collectively, "BBG-BBGM"), to dismiss the claims of the plaintiff Omni Hotels Management Corporation ("Omni") for lack of personal jurisdiction, for improper venue, or, in the alternative, to transfer this case to the United States District Court for the Southern District of New York. For the reasons set forth below, all of the defendants' motions are denied.

## I. BACKGROUND

This case arises out of an alleged breach of contract and negligence action brought by the plaintiff Omni against the defendants BBG-BBGM. "On or about August 1, 2005, Omni hired BBG-BBGM to provide professional interior architectural and design services for the renovation of their food and beverage facilities at the Omni Berkshire Hotel in New York, New York." Plaintiff's Original Complaint ("Complaint") ¶ 8. According to plaintiffs, a "key component" of the redesigned facility was the "Fireside Restaurant," which was to have fireplaces located throughout to allow each patron to have a "fireside seat," regardless of where they were seated. *See* Complaint ¶ 9. To realize this concept, the defendants proposed and installed Ecosmart burners, "which are decorative fireplaces (also referred to as 'fireboxes') manufactured by an Australian company called The Fire Company." *See* Complaint ¶ 10; *see also* Original Answer of Defendants Brennan Beer Gorman/Architects, P.C., Brennan Beer Gorman/Architects, L.L.P., and Brennan Beer Gorman Monk/Interiors, Inc. ("Answer") ¶¶ 10-11. However, "despite more than six (6) months of repeated and continuous attempts to obtain the necessary permits and approvals to light the fireboxes," the plaintiff has not been able to use the fireboxes because they have not been approved for commercial use in New York City. *See* Complaint ¶ 11. Although the Fireside Restaurant is open, the plaintiffs claim that "[u]ntil the fireboxes are lit, the restaurant's central theme and entire design concept

is without meaning or purpose" and furthermore that "the restaurant and Omni have suffered irreparable harm due to disappointed patrons and negative publicity." *See* Complaint ¶ 12.

Based on these background facts, Omni brought this action against BBG-BBGM for breach of contract and negligence. The defendants have moved to dismiss the action for lack of personal jurisdiction and for improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and (b)(3). *See* Motion of Defendants to Dismiss for Lack of Personal Jurisdiction and Brief in Support ("Motion to Dismiss for Lack of Personal Jurisdiction") and Motion of Defendants to Dismiss for Improper Venue and Brief in Support ("Motion to Dismiss for Improper Venue").

## II. ANALYSIS

### A. Motion to Dismiss for Lack of Personal Jurisdiction

#### 1. *The Factual Standard: A* Prima Facie *Case*

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Gardemal v. Westin Hotel Company*, 186 F.3d 588, 592 (5th Cir. 1999). If the district court chooses to decide the matter without an evidentiary hearing, the plaintiff may meet its burden by presenting a prima facie case for personal jurisdiction. *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.

The court will take the allegations of the complaint as true, except where they are controverted by opposing affidavits, and all conflicts in the facts are resolved in favor of the plaintiff. *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592. In making its determination, the court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of recognized discovery methods. *Allred v. Moore & Peterson*, 117 F.3d 278, 281(5th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998); *Thompson v. Chrysler Motors Corporation*, 755 F.2d 1162, 1165 (5th Cir. 1985).

2. *The Legal Standard*

A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent that he would be amenable to the jurisdiction of a state court in the same forum. *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984). Applying state law, this court must first determine whether Texas, the forum state, could assert long-arm jurisdiction. *Id.* Because the Texas long-arm statute confers jurisdiction to the limits of the federal constitution, *Access Telecom, Inc. v. MCI Telecommunications Corporation*, 197 F.3d 694, 716 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000); *Hall v.*

*Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408 (1984), the court need only concern itself with the federal due process inquiry. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Wilson*, 20 F.3d at 647 n.1; *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 17.041 *et seq.* (Vernon 1997) (Texas long-arm statute).

### 3. *Due Process Requirements*

Due process requires the satisfaction of two elements to exercise personal jurisdiction over a non-resident defendant: (1) the nonresident must have some minimum contact with the forum that results from an affirmative act on its part such that the nonresident defendant could anticipate being haled into the courts of the forum state; and (2) it must be fair or reasonable to require the nonresident to defend the suit in the forum state. *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 474-78 (1985); *Gulf Consolidated Services, Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071, 1073 (5th Cir.), *cert. denied*, 498 U.S. 900 (1990). The Due Process Clause ensures that persons have a "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)).

To establish minimum contacts with the forum, a nonresident defendant must do some act by which it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its

laws." *Burger King*, 471 U.S. at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). However, the unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy this requirement. *Burger King*, 471 U.S. at 474 (quoting *Hanson*, 357 U.S. at 253); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (citing *Kulko v. California Superior Court*, 436 U.S. 84 (1978); *Hanson*, 357 U.S. at 253). In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum. *Quill Corporation v. North Dakota*, 504 U.S. 298, 307 (1992).

Two types of *in personam* jurisdiction may be exercised over a nonresident defendant: specific jurisdiction and general jurisdiction. Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum state and those contacts meet the due process standard. *J.R. Stripling v. Jordan Production Company, LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (quotations and citations omitted). "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.'" *Holt Oil & Gas Corporation v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (citations omitted), *cert. denied*, 481 U.S. 1015 (1987). General

jurisdiction, on the other hand, may be found when the nonresident's contacts with the forum are "continuous and systematic," even though the claim is unrelated to those contacts. *Helicopteros Nacionales*, 466 U.S. at 415-16.

Under either a specific or general jurisdiction analysis, however, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King*, 471 U.S. at 474 (quoting *International Shoe Company v. Washington*, 326 U.S. 310, 316 (1945)). The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'" *Id.* at 475 (citations omitted). A plaintiff must establish a substantial connection between the nonresident defendant and the forum state. *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir. 1992), *cert. denied*, 506 U.S. 867 (1992); *Bearry v. Beech Aircraft Corporation*, 818 F.2d 370, 374 (5th Cir. 1987) (citing *Burger King*, 471 U.S. at 475 n.18; *McGee v. International Life Insurance Company*, 355 U.S. 220, 223 (1957)).

A court must consider all factors when making the purposeful availment inquiry; "no single factor, particularly the number of contacts, is determinative." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is

determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982); see also *Coats v. Penrod Drilling Corporation*, 5 F.3d 877, 884 (5th Cir. 1993), *cert. denied*, 510 U.S. 1195 (1994).

4.  *Discussion*

a.  Minimum Contacts

There is a significant connection between BBG-BBGM, Texas, and Omni's claims that permits the exercise of specific jurisdiction in this case. Omni has submitted various affidavits in support of its *prima facie* case. *See, e.g.*, Affidavit of Michael Panzer ("Panzer Aff."); *see also, e.g.*, Affidavit of Stephen Rosenstock ("Rosenstock Aff."). Omni has also presented a copy of the Proposal for Interior Architectural and Design Services ("Agreement"). BBG-BBGM was to perform its services pursuant to this Agreement. *See* Panzer Aff. ¶ 4. The Agreement itself contemplated that meetings would occur in Irving, Texas, and, in fact, according to Panzer's and Rosenstock's affidavits, they "participated in at least one (1) meeting with BBG-BBGM at Omni's office in Irving, Dallas County, Texas." *See* Agreement ¶ A ("[w]ithin this schedule, BBGM proposes 7 meetings with Ownership, approximately one every three weeks, 3 of these meetings will occur in Irving, TX and

4 of these meetings will occur in New York at the property"); *see also* Panzer Aff. ¶ 8; *see also* Rosenstock Aff. ¶ 5.

"Omni's negotiation of the Agreement occurred from its home office in Irving, Dallas County, Texas." Panzer Aff. ¶ 5. As Omni's Vice President of Project Management, Panzer executed the Agreement in Irving, Texas. *Id.* ¶¶ 3, 5. The general contractor for the project was also selected by Omni representatives in Irving, Texas. *Id.* ¶ 6. Moreover, payment to BBG-BBGM was made from Omni's office in Irving, Texas. *See* Affidavit of Elaine Hicks ("Hicks Aff.") ¶¶ 2-4.

"All architectural and interior design documentation was sent by BBG-BBGM to Omni's representatives for review and approval in Irving, Dallas County, Texas." Panzer Aff. ¶ 9. After a review of this documentation, Omni representatives in Irving, Texas would make "comments, revisions, and decisions" to be submitted back to BBG-BBGM. *See* Plaintiff's Response and Brief in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction ("Response to Motion to Dismiss for Lack of Personal Jurisdiction") ¶ 9.b.; *see also* Rosenstock Aff. ¶ 6. Additionally, "[d]uring the construction phase of the project, [Panzer] initiated weekly conference calls with BBG-BBGM and [the general contractors] from [his] office in Irving, Dallas County, Texas." Panzer Aff. ¶ 10. Panzer avers he participated in at least twelve of these weekly conference calls. *Id.* Additionally, progress reports "regarding various issues were sent by BBG-BBGM to Omni" in Irving, Texas. *Id.* In addition to emails,

conference calls, and meetings in Texas, some business was also conducted "via regular mail, federal express, and facsimile." *Id.*

The defendants' contacts with Texas were not, in the language of *Burger King*, 471 U.S. at 480, "random," "fortuitous," or "attenuated." "Defendants' affiliation with Omni in Texas made it reasonably foreseeable that litigation might possibly occur in Texas." Response to Motion to Dismiss for Lack of Personal Jurisdiction ¶ 11. Taking into account BBG-BBGM's physical presence in Texas during negotiations of the Agreement, and the course of dealing among the parties, including extensive correspondence and required approval of design details by Omni representatives in Texas, the court finds that Omni has established a *prima facie* case of minimum contacts between the defendants and Texas.

b. Fair Play and Substantial Justice

Defendants argue that this court's assumption of jurisdiction "will offend traditional notions of fair play and substantial justice and will be inconsistent with the constitutional requirements of due process." Motion to Dismiss for Lack of Personal Jurisdiction ¶ 9. To determine whether personal jurisdiction comports with fair play and substantial justice, the court must examine a number of factors, including: (1) the defendants' burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the interstate judicial system's interest in efficient resolution of controversies; and (5) the shared interests

of the several states in furthering fundamental substantive social policies. *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 113 (1987). As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Enviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp.2d 720, 725 (S.D. Tex. 1999) (quoting *Burger King*, 471 U.S. at 477). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (quoting *Guardian Royal Exchange Assurance, Limited v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex.1991)).

Turning now to the factors articulated in *Asahi*, the court finds that the burden on the defendants is minimal. The Supreme Court has stated that "because 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." *Burger King*, 471 U.S. at 474 (quoting *McGee*, 355 U.S. at 223). The defendants have already retained local counsel to represent them in this case, which favors a finding that their burden is minimal. See, *e.g.*, *Examination Management Services, Inc. v. Partners for Insurance, L.L.C.*, 2005 WL 280323, at *5 (N.D. Tex. 2005) (holding that "[a]lthough Defendants claim that they would be

burdened by having to litigate in Texas because Defendants, their witnesses, and relevant documents are located in Michigan, Defendants previously sent representatives to Texas and are already represented by local counsel, so Defendants' burden will not be great").

Furthermore, the State of Texas has a substantial interest in regulating the manner in which Texas corporations may contract with out-of-state entities. See *Burger King*, 471 U.S. at 473 ("[a] State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors"). In *Burger King*, the Supreme Court stated, "with respect to interstate contractual obligations, we have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.* (quoting *Travelers Health Association v. Virginia*, 339 U.S. 643, 647 (1950)).

The plaintiff is a Texas corporation, located in Irving, Dallas County, Texas. Texas has an interest in the outcome of this litigation and providing a local forum for the resolution of disputes such as the one before this court certainly comports with "fair play and substantial justice." The assertion of personal jurisdiction by this court is fair and safely within the limits imposed by due process. As a result, the defendants' motion to dismiss for lack of personal jurisdiction is denied.

B.  Motion To Dismiss for Improper Venue

The defendants also move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3).  Once a defendant raises the issue of improper venue, the plaintiff has the burden to prove that the chosen venue is proper.  *Psarros v. Avior Shipping, Inc.*, 192 F. Supp.2d 751, 753 (S.D. Tex. 2002).  "On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff."  *Braspetro Oil Services Co. v. Modec (USA), Inc.*, 2007 WL 1425851, at *2 (5th Cir. 2007) (citing *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004)).

When jurisdiction is founded only on diversity of citizenship, as is the case here, venue is governed by 28 U.S.C. § 1391(a).  Section 1391(a)(1) provides that venue is proper in "a judicial district where any defendant resides, if all defendants reside in the same state."  *Id.*  For purposes of § 1391, "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  28 U.S.C. § 1391(c).  "Although section 1391(c) appears to apply only to corporations, unincorporated associations such as partnerships are analogous to corporations for venue purposes."  *Nayani v. Horseshoe Entertainment*, 2007 WL 1062561, at *8 (N.D. Tex. 2007) (citing *Penrod Drilling Company v. Johnson*, 414 F.2d 1217, 1220-21 (5th Cir. 1969), *cert. denied*, 396 U.S. 1003 (1970)).

The defendant Brennan Beer Gorman/Architects, P.C. is "a New York domestic professional corporation." Complaint ¶ 2. The defendant Brennan Beer Gorman/Architects, L.L.P., is "a New York domestic limited liability partnership." *Id.* ¶ 3. The defendant Brennan Beer Gorman Monk/Interiors, Inc. is "a New York domestic business corporation." *Id.* ¶ 4. Therefore, since "unincorporated associations such as partnerships are analogous to corporations for venue purposes," *Nayani*, 2007 WL 1062561 at *8, and since this court has personal jurisdiction over the defendants as already established, the court finds that venue in this district is proper.

### C. Transfer of Venue

A district court may transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The moving part[y] bear[s] the burden of proving by a preponderance of the evidence that transfer is appropriate." *Bank One, N.A. v. Euro-Alamo Investments, Inc.*, 211 F.Supp.2d 808, 812 (N.D. Tex. 2002).

As a threshold matter, the language of Section 1404(a) requires the court to determine whether the proposed transferee district is one in which the suit might have been brought. *Illinois Union Insurance Company v. Tri Core Inc.*, 191 F.Supp.2d 794, 797 (N.D. Tex. 2002). Such a district "is one in which upon commencement of the suit the plaintiff ha[d] a right to sue independently of the wishes of the

defendant." *Independent Fish Company v. Phinney*, 252 F.Supp. 952, 953 (W.D. Tex. 1966) (citing *Hoffman v. Blaski*, 363 U.S. 335, 344, 80 S.Ct. 1084, 1090, 4 L.Ed.2d 1254 (1960)). Therefore, the first question is whether or not the Southern District of New York would have been a proper venue for this lawsuit. A diversity suit may be brought in any "judicial district where any defendant resides, if all defendants reside in the same State." 28 U.S.C. § 1391(a)(1). Accordingly, venue would be proper in the Southern District of New York because all the defendants are New York residents, and because "each of the Defendants is a business entity organized under the laws of the State of New York." Motion to Dismiss for Improper Venue ¶ 8. While the defendants have satisfied the first part of the inquiry, more must be shown to warrant a transfer of venue.

After determining that the transferee district is one in which the case might have been brought, the court considers "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Peteet v. Dow Chemical Company*, 868 F.2d 1428, 1436 (5th Cir.) (internal quotations and citations omitted), *cert. denied*, 493 U.S. 935 (1989). These factors include: (1) the convenience of the parties, (2) the convenience of material witnesses, (3) the availability of process to compel the presence of unwilling witnesses, (4) the cost of obtaining the presence of witnesses, (5) the relative ease of access to sources of proof, (6) calendar congestion,

(7) where the events in issue took place, and (8) the interests of justice in general. *Minka Lighting, Inc. v. Trans Globe Imports, Inc.*, 2003 WL 21251684, at *2 (N.D. Tex. 2003) (Fish, C.J.).

The first two factors to be considered are the convenience of the parties and the convenience of material witnesses. BBG-BBGM avers generally that the Southern District of New York would be a more convenient forum for the parties as well as the witnesses because "[a]ll of Defendants files, records, and witnesses are located in the State of New York as are the relevant files and witnesses of the Plaintiff." Motion to Dismiss for Improper Venue ¶ 10.A. However, the plaintiff disputes this, offering for its part a specific list of documents and individual witnesses that are located in Irving, Texas. *See* Response to Defendant's Motion to Dismiss for Improper Venue ¶ 16. Although BBG-BBGM will surely incur additional costs if it must defend an action in this forum, Omni will incur similar expenses if the forum were to be transferred to New York. "Shifting expenses from one party to another does not weigh in favor of transferring a case without some evidence that shifting those expenses would serve the interests of justice." *Frost v. ReliOn, Inc.*, 2007 WL 670550, at *3 (N.D. Tex. 2007) (Fish, C.J.).

Moreover, "where key witnesses are employees of the party seeking transfer, their convenience is entitled to less weight because that party will be able to compel their testimony at trial." *Id.* at *4 (citing *Sanders v. State Street Bank and Trust*

*Company*, 813 F.Supp. 529, 535 (S.D. Tex. 1993). Accordingly, while the Southern District of New York may provide a more convenient forum for the defendants' witnesses, BBG-BBGM can easily compel its employees to testify in Texas, and transferring this case would simply shift expenses from one party to the other. BBG-BBGM offers the statement that "other witnesses, including but not limited to governmental officials of the City of New York . . . would be needed to provide necessary testimony." Motion to Dismiss for Improper Venue ¶ 10.C. However, the defendants fail to show why this testimony is "necessary" or state specifically who these "other witnesses" are. See *Id.* (the only other witnesses defendants specifically mention are the "fire marshal's office and code compliance office"). Because potential witnesses are located in both venues and because each party would incur substantial expense in presenting its witnesses in the other forum, this factor does not favor a transfer.

The next factor to consider is the ease of accessing evidence in each venue. However, due to increasing technological advances, this factor's importance has been significantly diminished. *Frost*, 2007 WL 670550 at *4. Thus, this factor does not affect the court's analysis and does not support a transfer.

Neither party has presented arguments related to the comparative calendar congestion in the Northern District of Texas or the Southern District of New York. This factor, therefore, has neutral weight in the analysis.

The next factor to consider is where the relevant events took place. BBG-BBGM argues that the relevant events in this matter took place in the Southern District of New York, because that is where a "substantial part of the Plaintiff's claim" occurred. Motion to Dismiss for Improper Venue ¶ 6. However, while the actual construction of the project took place in New York, negotiations, communication, design approval, and payments all occurred in or from Irving, Texas. Thus, while the project was located in New York, many other relevant events took place in Texas. *See* Response to Motion to Dismiss for Improper Venue ¶¶ 6-9. This factor does not favor transfer.

The final task in the court's transfer analysis is to evaluate the general interest of justice. Although a court considering transfer of venue under Section 1404(a) does not necessarily indulge a strong presumption in favor of the plaintiff's choice of forum, that choice is certainly a factor to be considered. *D.T. Systems, Inc. v. SOS Co., Inc.*, 2002 WL 413898 at *4 (N.D. Tex. 2002). After a consideration of "all relevant factors," *Peteet*, 868 F.2d at 1436, the court finds that Omni's choice of forum is sufficiently connected to its claims to maintain venue in the Northern District of Texas.

Having fully considered the equities in this case, the court concludes that none of the evidence or arguments presented by BBG-BBGM outweigh Omni's choice of

forum. Therefore, the motion to transfer venue to the Southern District of New York is denied.

### III. CONCLUSION

For the reasons stated above, BBG-BBGM's motion to dismiss for lack of personal jurisdiction is **DENIED**, its motion to dismiss for improper venue is **DENIED**, and its motion to transfer venue is **DENIED**.

**SO ORDERED**.

March 14, 2008.

*A. Joe Fish*
**A. JOE FISH**
**Senior United States District Judge**